IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
February 15, 2005 Session

# STATE OF TENNESSEE, DEPARTMENT OF CHILDREN'S SERVICES v. RDV

**Direct Appeal from the Juvenile Court for Anderson County
No. J-21244      Hon. Patricia Hess, Judge**

### No. E2004-01216-COA-R3-PT  - FILED MARCH 17, 2005

In this action to terminate father's parental rights, the Trial Court refused to appoint counsel for father, despite his claim of indigence.  On appeal, we vacate the Judgment and remand for further hearing on the issue of indigency.

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Juvenile Court vacated and remanded.**

HERSCHEL PICKENS FRANKS, P.J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR., J., and SHARON G. LEE, J., joined.

David A. Stuart, Clinton, Tennessee, for appellant.

Paul G. Summers, Attorney General and Reporter,
and
Douglas Earl Dimond, Senior Counsel, Nashville, Tennessee, for appellee.

## OPINION

This is an action to terminate parental rights between the minor child, DM, and his biological father, RDV, who was incarcerated at the time of the termination hearing.

The Petition to Terminate was filed on October 13, 2003, seeking to terminate the rights of both parents, and alleged grounds for termination of parental rights.

A hearing was scheduled for January 12, 2004, and at the beginning of the hearing, the Judge stated that there had been some contact from RDV or his family about getting a form filled out so that he could be appointed counsel, but the Court had not received his application. RDV's mother attended the hearing, and she advised the Court that the form had been filled out by RDV and faxed to the Court, but the Judge told her it was not there, and that she should try to get a copy. The mother reported that RDV was incarcerated in Florida at the time, having been moved from Knox County the previous week.

The Court then proceeded to hear testimony from the DCS worker regarding the mother and her circumstances. At the conclusion of hearing that evidence, the Court terminated the mother's parental rights.

RDV's family then returned to the courtroom, and the Court reviewed a copy of a Uniform Affidavit of Indigency signed by RDV. The Court noted that the affidavit stated that RDV was employed by Russell Gibson, and enquired of the mother, who advised the Court that Mr. Gibson was RDV's father. The Court enquired the name of the business and the nature of the business, and the mother said that it was a family tree business, and when RDV worked he earned $18.00 an hour. The mother on the court's inquiry said that RDV had an interest in the business, and that he had been a partner in the business before his incarceration.

RDV's sister then explained that the father was going to own half the business once he paid for his interest, but that he had not done so. Whereupon, the Court responded, "Well he is a partner and he has a half interest whether you like it or not. So you just need to answer my questions about how much the equipment is worth." His sister replied that the equipment was worth $40,000, which was all in her name. The Court then stated that RDV would not qualify for an attorney because of his partnership interest.

The Court continued the case until January 29, 2004 in order for RDV to get counsel, and RDV could participate in the hearing by teleconference from the jail.

The affidavit filed by RDV stated that he was incarcerated, and had no income and no assets. At the hearing on January 29, 2004, RDV participating by teleconference, asked the Court why he was not allowed to have an attorney appointed, and the Court replied that he did not qualify based on his affidavit of income. RDV then stated that he had no income and no assets, and the Judge stated that there was prior testimony of ownership in a business. RDV stated, "But that's gone completely under. I don't have a business. A-Reasonable Tree Service does not exist anymore. The Judge replied, "That's not the statements of those who were here, sir. And then when they found out that that impacted your ability to get a lawyer, they wanted to change their testimony. But that's a concluded matter."

RDV attempted to explain that the Court was confusing his tree business and his sister's tree business, which was A-Afforded Tree Service, but the Court replied there was no confusion, that he was not to argue with the Court, and "that is how that is." The hearing then

proceeded, and at the conclusion of the hearing the Court entered a decree terminating the parental rights of RDV.

Several issues are presented on appeal, but the determinative issue is whether RDV was improperly denied his right to counsel.

RDV asserts that the Court improperly denied him his right to counsel. This Court has previously addressed the issue of right to counsel in parental termination proceedings, in the case of *In re Valle*, 31 S.W.3d 566, 572 (Tenn. Ct. App. 2000), wherein it was explained:

> Under the United States Constitution, parents do not have an absolute right to counsel in termination of parental rights proceedings. *Lassiter v. Dept. of Social Services*, 452 U.S. 18, 101 S. Ct. 2153, 68 L. Ed. 2d 640 (1981). The *Lassiter* Court, however, recognizing that the requirements of due process vary from case to case, determined that the nature of the proceeding and the interests involved are determinative factors in what due process requires. 101 S.Ct. at 2158. In *State ex rel. T.H. by H.H. v. Min*, 802 S.W.2d 625 (Tenn. Ct. App. 1990), the parents of a minor child filed a complaint and petition for writ of habeas corpus, against the Commissioner of the Department of Human Services, seeking a declaratory judgment that their due process rights were violated by failure of the juvenile court to appoint counsel to represent them at various custody hearings. This Court noted that the issue on appeal is whether the due process provisions of the state and/or federal constitutions require the juvenile court to appoint counsel for the parents in a proceeding in which the parents face the possibility of losing custody of the child. Id. at 625. The Court noted that it is well established "that the parental right to raise one's children is a fundamental liberty protected by the due process clause of the Fourteenth Amendment." Id. at 626. The Court further noted that the *Lassiter* Court and the Circuit Court of Appeals in *Davis v. Page*, 714 F.2d 512 (5th Cir. 1983) listed several factors to determine whether an indigent parent in a hearing affecting parental rights may be entitled to the assistance of counsel as a matter of due process. The Court stated:
>
> To help assess the risk of an unfair proceeding resulting in an erroneous decision, the courts in *Lassiter* and *Davis* have listed several factors that bear on the question. They include: (1) whether expert medical and/or psychiatric testimony is presented at the hearing; (2) whether the parents have had uncommon difficulty in dealing with life and life situations; (3) whether the parents are thrust into a distressing and disorienting situation at the hearing; (4) the difficulty and complexity of the issues and procedures; (5) the possibility of criminal self-incrimination; (6) the educational background of the parents; and (7) the permanency of potential deprivation of the child in question. *Lassiter*, 101 S.Ct. at 2161-2163; *Davis*, 714 F.2d at 516-517.

Id. at 627.

Rule 39 of the Tennessee Rules of Juvenile Procedure prescribes the procedures for termination of parental rights cases. Rule 39(f) provides in pertinent part:

(f) Adjudicatory Hearing on Termination

(1) The court shall conduct an adjudicatory hearing to determine the issues raised by the petition and by any answer(s) filed. Notice of the hearing shall be provided in the summons.

(2) At the beginning of the hearing, any party who appears without an attorney shall be informed of the right to an attorney, and in the case of an indigent respondent, the court shall consider the facts and circumstances alleged and make a determination as to whether an attorney should be appointed.

In *State, Dept. of Human Services v. Taylor*, 1997 WL 122242 (Tenn. Ct. App.), this Court held that the procedures of Rule 39(f)(2) concerning the right to have an attorney, appointed or otherwise, are mandatory. In so holding, the Court said:

Our present Rules of Juvenile Procedure became effective July 1, 1984. Since these rules postdate *Lassiter*, it would appear that in order to insure that the conditions therein stated are properly considered, the Tennessee Supreme Court and the General Assembly, by the adoption of the Rules of Juvenile Procedure, provide minimum requirements which the trial court must follow when a parent appears at a termination hearing without an attorney.

Id. at *2.

The statute regarding termination of parental rights, Tenn. Code Ann. §36-1-113, provides:

(f) Before terminating the rights of any parent or guardian who is incarcerated or who was incarcerated at the time of an action or proceeding is initiated, it must be affirmatively shown to the court that such incarcerated parent or guardian received actual notice of the following:

(1) The time and place of the hearing to terminate parental rights;

(2) That the hearing will determine whether the rights of the incarcerated parent or guardian should be terminated;

(3) That the incarcerated parent or guardian has the right to participate in the hearing and contest the allegation that the rights of the incarcerated parent or guardian should be terminated, and, at the discretion of the court, such participation may be achieved

-4-

through personal appearance, teleconference, telecommunication or other means deemed by the court to be appropriate under the circumstances;

(4) That if the incarcerated parent or guardian wishes to participate in the hearing and contest the allegation, such parent or guardian:

(A) If indigent, will be provided with a court-appointed attorney to assist the parent or guardian in contesting the allegation;  and

(B) Shall have the right to perpetuate such person's testimony or that of any witness by means of depositions or interrogatories as provided by the Tennessee Rules of Civil Procedure;  and

(5) If, by means of a signed waiver, the court determines that the incarcerated parent or guardian has voluntarily waived the right to participate in the hearing and contest the allegation, or if such parent or guardian takes no action after receiving notice of such rights, the court may proceed with such action without the parent's or guardian's participation.

In addition, Supreme Court Rule 13(d) provides that in cases dealing with the termination of parental rights, the court "shall advise any party who is without counsel that he or she has the right to be represented by counsel throughout the case and that counsel will be appointed to represent the party if he or she is indigent and requests the appointment of counsel." Subsection (e) of this rule provides that a party requesting the appointment of counsel must complete an Affidavit of Indigency Form, and the court "shall upon inquiry make a finding as to the indigency of the party pursuant to the provisions of Tenn. Code Ann. §40-14-202."

Tenn. Code Ann. §40-14-202 states "whenever the accused informs the court that such accused is financially unable to obtain the assistance of counsel, it is the duty of the court to conduct a full and complete hearing as to the financial ability of the accused to obtain the assistance of counsel, and, thereafter, make a finding as to the indigency of the accused." The statute goes on to list several factors which the court is required to consider, such as the nature of the services to be rendered, the usual charge in the community for an attorney to render such service, the income of the accused, any property owned by the accused, the poverty level income guidelines compiled by the department of labor, whether the party posted a bond, and other relevant circumstances. Tenn. Code Ann. §40-14-202. Further, Tenn. Code Ann. §40-14-201, the definition section relating to the above statute, defines an indigent person as "any person who does not possess sufficient means to pay reasonable compensation for the services of a competent attorney."

Whether a person is indigent is a question of fact, and as such, the standard of review is *de novo* with a presumption of correctness of the trial court's findings, unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d). In this case, the evidence in the record does not support the Trial Court's finding that RDV was not indigent.

RDV filed an affidavit which listed his income and assets at zero. RDV's mother testified that RDV had been a partner in a tree cutting business with her, but stated that she owned all the equipment and he did not own it. RDV's sister attempted to explain to the court that RDV had never paid for his interest in the business, but the Court discounted her testimony, describing it as "a change in the story."

At the beginning of the second hearing, RDV explained to the Court that his business was bankrupt, owned no equipment, and he thus had nothing to sell. The Court refused to reconsider, and in the Court's Order, she noted that the ruling that RDV was not entitled to an attorney was based on his affidavit (which listed zero income/assets) and on RDV's mother's testimony that RDV made good money in his tree-trimming business and supported two households. RDV, of course, was incarcerated at the time of the hearing, and there was no evidence that he was earning any income or supporting two households. The Court also remarked about statements RDV made during a prior hearing, but there is no transcript of that hearing.

The Court of Criminal Appeals, when construing the requirements of Tenn. Code Ann. § 40-14-202, has ruled that an indigency hearing is required at any point in the proceedings when the defendant claims indigency. *State v. Dubrock*, 649 S.W.2d 602 (Tenn. Crim. App. 1983). Thus, the fact that a defendant had previously been able to afford private counsel did not preclude him from later claiming a change in circumstances had rendered him indigent and in need of an appointed attorney. *Id.* The Court noted that the legislature placed no limits on the word "whenever" as used in Tenn. Code Ann. § 40-14-202, and that a defendant who put the trial court on notice that he could no longer afford an attorney was entitled to an indigency hearing. *Id.* Thus, the fact that RDV may have previously been in a different financial condition would not preclude him from claiming indigency at the time of the termination proceedings, and he would still be entitled to a hearing on this issue.

The statute requires a "full and complete hearing" regarding the indigency claim, which did not occur in this case. At the initial hearing, the Court asked questions of RDV's mother and sister (who RDV claims were not sworn, although it is impossible to determine this from the record), but then refused to allow them to explain their answers or to provide the Court with additional information regarding RDV's situation. Likewise, the Court had RDV's affidavit which showed he had no assets or income, but did not question RDV at the later hearing regarding the same, nor did the Court allow RDV to explain his situation, but simply told RDV that she had already made a decision on that issue. The foregoing demonstrates that RDV did not have a full and complete hearing on this issue, as required statute. *See State v. Miller*, 2003 WL 1618070 (Tenn. Crim. App. Mar. 28, 2003).

Since RDV was denied a proper hearing on the issue of his indigency and need for appointed counsel, the Judgment is vacated, and the cause remanded, and the Trial Court is directed to conduct a full hearing on RDV's indigency, and a new trial on the propriety of the termination. The Court is required to comply with the statute and Court Rules and must take into account the

factors as enumerated. Moreover, the Court cannot consider the assets or income of the RDV's family. *State v. Gardner*, 626 S.W.2d 721 (Tenn. Crim. App. 1981); *State v. Ramsey*, 2003 WL 21658589 (Tenn. Crim. App. July 15, 2003). As above reiterated, the Trial Court cannot preclude RDV's claim of indigency based simply on the fact that at an earlier time in the proceedings, he may not have been indigent. *See Dubrock* and *Ramsey*. Further, the Court should consider that "[i]t is not necessary that one be a 'pauper' in order to be 'indigent' for purposes of having appointed counsel . . . Indigency in the sense of ability to employ competent counsel is not necessarily equatable with 'destitution'. The judge need only be satisfied that representation essential to an adequate defense is beyond the means of the defendant. Indigency is a relative concept, and must be defined with reference to the particular right asserted." *State v. Gardner*, 626 S.W.2d 721, 725 (Tenn. Crim. App. 1981).

The Trial Court's Order of Paternal Termination is vacated and the cause remanded for further proceedings consistent with this Opinion. The cost of the appeal is assessed to the State of Tennessee, Department of Children's Services.

_____
HERSCHEL PICKENS FRANKS, P.J.